**STONE v. NELMOR CORP.**

Civ. 10111.

United States District Court,
E. D. Michigan, S. D.

Dec. 4, 1951.

Allan C. Miller of Lucking, Van Auken, Schumann & Greiner, of Detroit, Mich., for the plaintiff.

Abraham Satovsky of the office of Wm. Henry Gallagher, Detroit, Mich., Max Richard Kraus, Chicago, Ill., for the defendant.

THORNTON, District Judge.

This is an action for damages for breach of a license agreement for the manufacture and sale of Rear View Mirrors covered by U. S. Letters Patent No. 2,119,654, issued June 7, 1938, wherein the plaintiff claims that the defendant has failed to make proper royalty payments under the provisions of the license agreement.

The defendant moves for summary judgment of dismissal on the ground that

"(a) The plaintiff, by reason of the said license agreement, is misusing the patent and extending the patent monopoly to unpatented parts in that a royalty is required to be paid on the manufacture and sale of unpatented rear view mirrors, whereas the sole claim of the licensed patent No. 2,119,-654 covers the combination of an automobile having a vehicle body with a window opening, a glass for the window, a seat positioned within the body, a rear view mirror with bracket means and the manner and position in which the mirror is attached to said vehicle body. The defendant only manufactures and sells rear view mirrors to the trade and does not manufacture nor sell automobiles or apply said unpatented mirrors to automobiles.

"(b) The agreement prohibits the defendant from selling to jobbers and dealers unpatented rear view mirrors having a reflecting surface greater than $3\frac{1}{2}$ inches, and hence restrains free and open competi-

tion in the manufacture and sale of unpatented articles."

In reliance on the foregoing, the defendant contends that an attempt by the owner of a patent to extend the patent monopoly to unpatented elements of a combination constitutes a violation of the anti-trust laws, and that such patent owner should be denied recovery, and further claims that the decision of the United States Supreme Court in Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, has a controlling effect on the within action in that " * * * the patent holder by agreement was extending his patented monopoly from a combination of elements to an unpatented element, namely, a switch, and hence the patent holder could not recover in court."

The defendant further contends that the Mercoid case is analogous to the within matter. With this we cannot agree, for the following reasons: The Mercoid case involves an exclusive license, the within case a non-exclusive license; the Mercoid case involves one element out of three used as the basis for royalty payments, whereas the instant case involves the entire patented article used as a basis for royalty payments; in the Mercoid case there is a tie-in arrangement, whereas the agreement in the within matter is devoid of any tie-in arrangement; the Mercoid case involves a situation wherein the unpatented device was an integral structure embodied in the patent, whereas in the instant case the device claimed to be unpatented by the defendant is actually the subject of the patent; in the Mercoid case the patent was used to protect the market on a device on which no patent had been granted, whereas in this case the patent is being used to protect the very device patented, so that at this particular point in the proceedings it is difficult for this Court to find any analogy in the two controversies.

From the pleadings, the following presents itself for the consideration of this Court in making a determination on this motion for summary judgment:

The plaintiff is proceeding in this action upon the allegation that she has performed all the conditions required to be performed on her part under the license agreement, and further alleges that defendant has failed to perform the covenants and agreements to be performed on its part under said contract in that it failed to pay to the plaintiff the royalty payments provided for in the license agreement. The factual situation as presented by the plaintiff simply embraces a license agreement whereby the licensee, defendant herein, agrees to manufacture and sell rear view mirrors regardless of any subsequent assembly combination, and to pay certain royalties to the licensor.

The defendant states the following to be the subject matter of the within action:

"The license agreement on which suit is brought and which is attached to the complaint provides that the licensee shall pay a royalty on rear view mirrors manufactured and sold in accordance with the invention covered by Patent No. 2,119,654. The patent, a copy of which is attached hereto, is not directed solely to a rear view mirror but embraces a combination, only one element of which is the rear view mirror. The single claim of the patent is reproduced below, and for purposes of clarity is divided up into each of its component elements, each separately numbered:

"(1) In combination with an automobile having a vehicle body with a window opening;

"(2) a glass for closing the window opening inset from the outer edge of the vehicle body,

"(3) and a seat positioned within the body alongside the window opening,

"(4) a rear view mirror,

"(5) bracket means attached to the vehicle body at the upper horizontal edge of the window opening and attached to said mirror,.

"(6) for positioning the mirror on the outside of the glass in a predetermined area below the top edge and above the bottom edge of the window opening and between the approximate vertical planes of the front face of the seat bottom and the front face of the seat back, the said bracket

means being adapted for positioning the mirror with at least a portion of the mirror in the inset between the window glass and the outer edge of the body whereby the rear view mirror is positioned to one side and slightly forward but close to the eyes of the person occupying the said seat and therefore does not obstruct the front view of the said person and gives a rear view equal in scope to that of a larger mirror positioned forwardly of the above described area. * * *"

Defendant further states in his brief that "The license agreement involved in this suit requires that the defendant pay a royalty on the manufacture and sale of unpatented rear view mirrors. * * *"

The divergency in the views of the parties as to the factual situation with relation to the subject matter involved in this action, as exemplified by the foregoing, would readily permit the inference that counsel for the respective parties are talking about two different lawsuits and presents a genuine issue of fact that earnestly requires clarification by way of testimony.

"We think that the record in this case, instead of demonstrating that there was no genuine issue of fact to be tried, clearly demonstrates that there was such an issue. * * * Material issues of fact may not be tried and determined on motions for summary judgment." Kasper v. Baron, 8 Cir., 191 F.2d 737, 739.

" * * * the trial judge should be slow in granting a motion for summary judgment depriving a party of his right to trial by jury where there is a reasonable indication that a material fact is in dispute." Jessie Estepp, Administrator of the Estate of Larry Clifford Estepp, deceased v. Norfolk and Western Railway Company, 6 Cir., 192 F.2d 889.

The motion for summary judgment of dismissal is denied and an Order may be so entered.