A. L. TOUCHETT, also known as Lawrence Paul Touchett, Plaintiff,

v.

E Z PAINTR CORPORATION, a Delaware corporation, Defendant.

Eleanor TOUCHETT, Plaintiff,

v.

E Z PAINTR CORPORATION, a Delaware corporation, Defendant.

Civ. A. Nos. 6013, 6489.

United States District Court
E. D. Wisconsin.

March 14, 1957.

Thomas E. Fairchild, Milwaukee, Wis., for Eleanor Touchett.

Charles J. Merriam, Herbert L. Stern, Jr., Claude A. Roth, Chicago, Ill., Charles B. Quarles, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action for royalties allegedly due under a patent license agreement. For some years prior to October 1948, plaintiff [1] was engaged in the development, manufacture and sale of paint rollers and paint trays. Plaintiff had become experienced with paint rollers and paint trays in Fond du Lac, Wisconsin, at a time he was part owner of a casket company. On April 5, 1945 he applied for a patent No. 2,427,581 which was issued September 16, 1947 on a paint roller. This patent was thereafter assigned to defendant's predecessor. On October 12, 1945 he applied for a patent on a paint tray. There was an interference proceeding involving one William R. Faust. Faust assigned his application to defendant's predecessor and on July 6, 1947 letters patent 2,444,584 was issued on plaintiff's application to defendant's predecessor, and on June 29, 1948 letters patent No. 2,444,096 was issued on the application filed by Faust to defendant's predecessor.

In 1945 plaintiff caused a Wisconsin corporation to be organized, under the name of E Z Paintr Corporation, for the purpose of manufacturing and marketing paint rollers and paint trays on a national basis. Plaintiff had a substantial interest in the corporation. He became its president and remained president of it and its successor corporations until October 1948.

Plaintiff was thoroughly familiar with the details of the manufacture and sale of paint rollers and trays on a national basis. He had personal contacts with customers and potential customers. He personally effected sales to the United States government, to the shipping de-

Jerold E. Murphy, R. W. Ashton, Fond du Lac, Wis., Elwin A. Andrus, Milwaukee, Wis., of counsel, for A. L. Touchett.

1. The word "plaintiff" in this opinion refers to the plaintiff A. L. Touchett.

Where the plaintiff Eleanor Touchett is referred to, she will be specifically named.

partment of the Bethlehem Steel Corporation, to Sherwin-Williams Company, and to the Pittsburgh Plate Glass Company, among others. He persuaded the Fuller Paint Company in San Francisco to sell E Z Paintr products in all of its stores in thirteen states. The testimony establishes that he was one of the pioneers in the development, production and marketing of these products.

Notwithstanding the success of the products, the corporation found itself in serious financial difficulty. In July 1947 additional capital was put into the corporation by Stern & Co. through a loan of $25,000 and the purchase of stock in an amount of $25,000.

For reasons not clearly shown by the testimony and which are probably not material to the questions presented, plaintiff and others, in the management of the company, came to disagreement. In October 1949 a contract was entered into between the plaintiff and defendant's predecessor, the basic terms of which were that the plaintiff and his wife, the plaintiff Eleanor Touchett, sold all of their stock to the corporation, the consideration being set forth in paragraph 3 of the agreement. Under the terms of the agreement, the corporation agreed to assign to plaintiff the title to the three patents. Plaintiff agreed to enter into an exclusive license royalty agreement, the terms of which were outlined in that contract, Plaintiff's Exhibit 21. Thereafter, and on January 5, 1949 a contract was entered into between plaintiff and the corporation, reciting that plaintiff was the owner of the three patents, that he granted to the corporation an exclusive license, that the corporation agreed to pay royalties, and in paragraph 4 of Defendant's Exhibit 1,

"Touchett (plaintiff) agrees to be precluded from manufacturing or selling or causing the manufacture or sale of any of the items covered by the foregoing patents or of any paint rollers or paint trays substantially similar to the items covered by said patents provided only

that Touchett shall be entitled to manufacture such items upon the request and order of the corporation. * * *" (Parenthesis supplied.)

Plaintiff also reserved the right to manufacture and sell the items in Canada and to manufacture them and export them to Canada only.

These contracts have been a fruitful source of litigation. Attached hereto, as Appendix, is a copy of the list of such litigation contained in defendant's brief. It is to be noted that there have been seven cases and that this contract has been directly before the Supreme Court of Wisconsin twice. It is probable that the litigation over the contracts was also the basis for the litigation described in Touchett v. Sutherland, 274 Wis. 35, 79 N.W.2d 80.

It is the desire of the court to make broad enough findings, covering all of the various issues and contentions, so that this matter may be finally disposed of.

Through various proceedings, the defendant has become a Delaware corporation, its principal place of business being in the city of Milwaukee. This action was commenced in the county court of Fond du Lac county, Wisconsin and was removed to this court on the ground of diversity of citizenship. Civil action No. 6489 was commenced in this court by Eleanor Touchett, and by order entered November 18, 1955, the two cases were consolidated for the purpose of trial.

In 1949 the defendant filed an infringement action against the Thomas Company in the United States District Court in Michigan. Plaintiff refused to join in that action. He was then joined as an involuntary plaintiff. That action involved alleged infringement of the two Touchett patents. One of the defenses set forth was that the patents were invalid. The court held in E Z Paintr Corp. v. Thomas, D.C., 113 F.Supp. 827, that patents No. 2,427,581 and 2,444,-584, the so-called Touchett patents, were invalid for want of invention and novelty. The so-called Faust patent was not involved in that litigation. Defend-

ant requested that plaintiff appeal from that judgment, which plaintiff refused to do. Following the decision in the Thomas case, the defendant served notice on the plaintiff that it was discontinuing all royalty payments, and no royalty payments have been paid since.

In the A. L. Touchett case, the defendant has pleaded several defenses. The principal defenses relied upon are (1) misuse of patents, and (2) eviction.

Eleanor Touchett's case asked for a return of the stock which she turned over to the corporation, alleging failure of consideration should the defendant prevail in the A. L. Touchett case. The defense set up in that action is that her stock was given as part of the consideration for the contracts involved, that she turned the stock over voluntarily for that purpose, that she shared in such royalties as were paid prior to the Thomas decision and stands in no other better or different position than her husband.

The issue of damages was severed, and the matters are now before the court for a decision on the other issues.

### Alleged Misuse of Patents

It is the contention of the defendant that the contract to pay royalties is void because the patents were used to stifle and prevent competition, thereby extending the monopoly unlawfully. Plaintiff's position in that respect is that there has been no such misuse; that the doctrine of misuse of patents is applicable only in the main where there are "tie-in sales"; that a judgment in the county court of Fond du Lac county, dated March 13, 1950, in an action between the parties is res judicata on the validity of the contracts in question. Defendant claims that the judgment in question was a consent decree; that, in any event, a contract which is void as against public policy, such as one involving misuse of patents, cannot be made valid by the doctrine of res judicata; otherwise, the defense of misuse of patents could be avoided by the entry of such judgment.

■■ The basic principles of the doctrine of misuse of patents are set forth in Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376. It is there set forth that public interest is the dominant consideration. The doctrine denies to the patentee the "power to use it in such a way as to acquire a monopoly which is not plainly within the terms of the grant." The patentee has the power to refuse a license but that does not enable him to enlarge the monopoly of the patent by the expedient of attaching conditions to its use.

Most of the many cases cited on the doctrine of misuse of patents involve "tie-in sales". The doctrine is broad enough and there are decisions applying it to situations where an attempt is made, by use of the patent, to stifle competition with unpatented articles. That is the claim here. Defendant's claim here is that plaintiff, who was a pioneer in the field of paint rollers and paint trays, who was thoroughly acquainted with the market nationally, has bound himself not to manufacture or sell "any paint rollers or paint trays substantially similar to the items covered by the patents."

The evidence shows clearly that there were many paint rollers and paint trays and devices on the market, other than the patented articles, which were used for the same purpose and which were in substantial and vigorous competition with the patented articles. Plaintiff's position is that the language quoted only goes as far as to cover the doctrine of equivalents, in other words, to prohibit plaintiff from manufacturing or selling articles which were the equivalent of those covered by the patents. The court does not believe that that language is susceptible of such narrow interpretation for the reason that the manufacture and sale of articles which were the equivalent of the patented articles (assuming the patents were valid) could be prevented in actions for infringement. That fact, together with a large number of competing devices which were clearly not covered by the patents, impels a finding that the language in question was intended to, and if the contracts are val-

id, did prohibit plaintiff from selling devices which were not covered by the patent, which were competitive on the market and which were used for the same purposes as the patented articles. The sentence in question uses the disjunctive "or" in stating he will not make or sell the items covered by the patent "or" articles substantially similar to the patented articles.

On the claim that the doctrine of *res judicata* prevents the defense of misuse of patents, the court is of the opinion that to sustain such a position would make it easy to void the defense of misuse of patents by collusive or friendly litigation. This doctrine is for the protection of the public and to prevent unlawfully extending the monopoly granted by a patent. This position is well brought out in the case of Mercoid Corporation v. Mid-Continent Investment Co., supra.

The doctrine of misuse of patents involves public policy. It involves more than the contracting parties. It is for the protection of the public. The many cases cited on that doctrine do not always draw a clear line of demarcation. It is an equitable doctrine and the rule seems to be that he who asserts it "must have clean hands". It is based upon the *use of the patent* for the purpose of unlawfully extending the monopoly.

The court believes that if two separate transactions had been entered into, substantially the same result could have been accomplished without raising the question of misuse. The corporation could have purchased the interest of plaintiff and his wife in the business and placed them under reasonable restrictions as to competition. In a separate contract a license could have been granted under the patents which did not contain a restriction on competition. The rule in Wisconsin, Journal Company v. Bundy, 254 Wis. 390, 37 N.W.2d 89, and the general rule elsewhere, is that in connection with the sale of a substantial interest in a business, the purchaser can lawfully bind the seller not to compete, provided that the restriction is reasonable with respect to time and territory, that the restriction is not any more broad than absolutely necessary to protect the purchaser in the "good-will" of the business that he has purchased. In the October contract there is a provision that if any court held that the restrictions are too broad as to time or as to territory covered, the court might amend the contract so that it is reasonable in those respects. The October contract was to cover a period of seven years, which has long since expired. No doubt the restriction covering the entire United States would be void as covering far too large a territory and seven years is a long time and might be questioned in that respect. This action was commenced July 13, 1953, a very short time before the expiration of the seven-year period. The court finds that the provisions in that contract, both as to territory and as to time, are unreasonable. An amendment now would not change the situation because the seven years had almost expired before the action was commenced.

Coming to the other considerations involved in the alleged misuse of patents, at the time the October 1948 contract was entered into, the corporation owned the patents, not plaintiff. The corporation would be the principal gainer by eliminating competition. The only gain to plaintiff might be that by eliminating his competition, his royalties would be increased through the larger volume of business of the corporation. As against his gain in that respect, there would be his loss of freedom to take advantage of his knowledge of the business and of the market in selling competing, but non-infringing (assuming the validity of the patents) articles. There is no doubt that such provision was much more to the advantage of the corporation than it was to the advantage of plaintiff, if it was actually to plaintiff's advantage at all. Nevertheless, he entered into the agreement, and the testimony shows that he has, in fact, lived up to the agreement. If he was a party to an illegal contract,

he has not purged the misuse. Neither has the misuse been purged by the corporation, it not having released plaintiff from that agreement and not having permitted him to compete. It is the finding of the court that the corporation was the moving party in misuse of the patents to eliminate competition and that plaintiff's part was much more passive than the part of the corporation.

Plaintiff claims that the doctrine of the misuse of patents is not applicable against the licensee, and that while technically the corporation is the licensee, that was a colorable transaction and, in truth and in fact, the defendant stands in the position of licensor because prior to these contracts the defendant, not plaintiff, owned the patents. In the case of McCullough v. Kammerer Corp., 9 Cir., 1948, 166 F.2d 759, the doctrine was applied against a licensee. An overwhelming majority of the cases that apply the doctrine apply it against the licensor. If the basic purpose of protecting the public is to be fulfilled, the court can see no logical reason why it should not be applied both ways.

Here, there is a question as to how equitable it would be to apply the doctrine against plaintiff when the corporation was the moving and urging party, the party to gain most by eliminating competition. There is no doubt that the contract provision was intended to eliminate competition and its purpose was to eliminate the competition of plaintiff who would have been a dangerous competitor.[1] The footnote indicates the present trend insofar as the Senate is concerned.

 For the reason that the court believes that it was the defendant rather than the plaintiff who actively *used the patents* to stifle competition and that plaintiff was at most a passive party to that misuse of patents, the court believes that as an equitable proposition, the doctrine should not be applied in favor of the defendant and against the plaintiffs in these cases.

### Defense of Eviction

Defendant claims that the decision in the Thomas case, supra, amounts to an eviction and has destroyed the value of the license. The position taken is that the consideration of payment of royalties is the right to prevent others from manufacturing and selling the patented articles, and that this consideration fails when the patents are held void even as against any one "infringer". Plaintiff's position is that the patents are presumed to be valid; that the judgment in the Thomas case, supra, does not prevent defendants from bringing action against

1. There has been some criticism of the application of the doctrine of misuse of patents. Thus, in the report of the Study of the Subcommittee on Patents, Trademarks, and Copyrights of the Committee on the Judiciary, United States Senate, February 7, 1957, Study No. 1 states at page 23:
"The doctrine of misuse, which bars relief to the plaintiff in infringement suits, often connected with antitrust violation, has resulted in destruction of patents in cases where other action could be more beneficial to the patent system as a whole. We should have a sound patent system, and then the destruction of the patent grant should be earnestly avoided."
and Study No. 2 of the same Subcommittee, released in 1957, states at page 36:

"The misuse doctrine has a broad sweep and many facets. These cannot be treated in detail here. Consideration will accordingly be confined to the underlying conceptual considerations bearing on the subject and to the clash of theory that should be borne in mind in all applications of the doctrine.
"The fundamental misuse logic finds support in well-accepted judicial decisions. Carried too far, however, the logic departs from reality and effectively destroys the patent right. Virtually any practical use of a patent in some measure influences the sale of products outside the scope of the patent."
No action has yet been taken by Congress to narrow the doctrine and if such action were taken, it would, no doubt, not be retroactive and would not affect this litigation.

any other "infringer" and does not adjudicate that the patents are invalid except as between the parties to the Thomas action.

Plaintiff also points out that the so-called Faust patent was not involved in the Thomas case. Defendant still has the Faust patent, which is presumed to be valid and under which plaintiff has a monopoly as to that kind of a tray, the one covered by the Faust patent. Defendant's answer to this contention is that actually the Faust patent is of no practical value; that defendant has not utilized the Faust patent since early 1949; that the cost of manufacture of paint trays under the Faust patent is so much more than the trays manufactured under the Touchett patent, or other competing trays, that it is impossible to try to successfully market the Faust trays and that they never have, since early 1949, in fact, been marketed by the defendant.

The evidence indicates, and the court finds, that the trays manufactured under the Faust patent cannot, as a practical matter, compete with the trays which serve the same purpose manufactured either under the Touchett patent or other competing trays. The Faust patent was acquired by plaintiff principally to avoid annoyance that the Faust patent might have caused and to end the interference proceeding in the patent office.

▪ Coming to the legal questions, the court is of the opinion that so far as the two Touchett patents are concerned, the Thomas decision amounts to an eviction. The court agrees with the reasoning contained in Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 1933, 63 F.2d 853, 854, wherein the court stated:

"But it seems to us that a different situation must of necessity arise where the monopoly, apparently created by the grant of a patent, has been destroyed by a decree of invalidity in a court of competent jurisdiction. The subject-matter of such a contract is essentially 'the monopo-

ly which the grant confers: the right of property which it creates' (citation), and, when this monopoly has been destroyed, and the exclusive rights of manufacture, sale, and use, purported to have been created by the patent are judicially decreed to be no longer exclusive, but are thrown open to the public at large, there has been a complete failure of consideration—an eviction—which should justify a termination of the contract." (Parenthesis supplied.)

As the court interprets the decision in Appleton Toy & Furniture Co. v. Lehman Co., 7 Cir., 1948, 165 F.2d 801, the Court of Appeals of the Seventh Circuit indicates that it is in accord with that decision insofar as it applies to exclusive licenses. It is an exclusive license that is involved here. See also Automatic Radio Mfg. Co. v. Hazeltine Research, 1 Cir., 1948, 176 F.2d 799.

That brings us to the question as to the effect of an eviction on the two Touchett patents where the Faust patent was also involved in the licensing agreement.

▪ The basic rule is that a partial failure of consideration, even up to fifty percent, does not invalidate the contract or excuse performance. There is also authority for the proposition that failure of the major portion of the consideration does not excuse performance. Here the court believes, as set forth above, that as a practical matter, the Faust patent had no value whatsoever, so that as a practical matter there has been a total failure of consideration even though it is presumed that the Faust patent is valid. A valid but commercially worthless patent is, as a practical matter, of no real value in the present situation. The defendant has not acquired, as a practical matter, the monopoly it sought, and agreed to pay royalties for.

For the foregoing reason, it is the opinion of the court that there has, in fact, been an eviction and that the judgment in the Thomas case, which became

final through failure of an appeal, has deprived defendant of what it agreed to pay royalties for. If the court is in error in this view, then the defendant would be liable to pay the minimum royalty because it still has the license under the Faust patent.

■ Defendant has sought to attack the validity of the Faust patent on the basis of the holding in the Thomas case. The Thomas case did not pass upon the Faust patent. It is a basic rule that the licensee is estopped to attack the validity of the patent under which he is licensed. Westinghouse Electric and Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316, Libbey Glass Mfg. Co. v. Albert Pick Co., 7 Cir., 1933, 63 F.2d 469.

There are two other issues involved which would become material in the event the court's rulings on the foregoing questions are found to be erroneous and in the event it becomes necessary that there be an accounting.

■ The testimony shows that the defendant placed patent labels on articles marketed which may not have come under the patents, using the patent numbers or some of them. It also represented in advertising matter that certain articles were covered by the patents. It is the opinion of the court that if plaintiff is entitled to recover, that in any accounting, royalties must be paid on articles sold and marketed with any of the patent labels attached and any articles sold under advertising material representing that the articles were covered by any of the patents in question. The evidence shows that the use of these labels and use of this advertising has been discontinued for some considerable period of time, but up to the time that articles were marketed under the labels or sold as a result of advertisements setting forth that they were covered by any of the patents, royalties should be paid.

■ It is the contention of the plaintiff that under the contract defendant is required to pay royalties on all articles manufactured and sold which were in any way similar to the patented articles, even those not covered by the patents. The court does not agree with that contention. The plaintiff claims that because defendant did, in fact, pay such royalties, it is bound to do so in the future. Defendant's contention is that such royalties were paid by it under mistake of fact. The court does not believe that the contract is sufficiently ambiguous so as to be subject to amendment or clarification by practical construction or the conduct of the parties. The court does not believe that because royalties were mistakenly paid on unpatented articles for some time, the defendant has become estopped to deny that it must continue to pay royalties on unpatented articles, or that such mistake resulted in a "new contract" requiring the continuance of such payments.

### Case of Eleanor Touchett

■ No consideration moved directly to the plaintiff Eleanor Touchett for her assignment of her stock. The evidence clearly shows, and the court finds, that this was all one transaction; that Eleanor Touchett, as the wife of A. L. Touchett, was interested in his procuring these contracts. The royalties that were paid were, in a large part, deposited to the joint account of A. L. Touchett and Eleanor Touchett. The court finds that she is bound by the validity or invalidity of the contracts between A. L. Touchett and the defendant. If A. L. Touchett is not entitled to recover, then Eleanor Touchett has no cause of action.

Counsel for defendant may prepare proposed findings of fact and conclusions of law and proposed judgment in conformity with this opinion, submitting them to plaintiffs' counsel for approval as to form only. Findings should be entered on all issues whether necessary to this judgment or not so that on any review, the Court of Appeals will have complete findings on all issues and in the hope that this litigation may be *finally* disposed of.