PROST, Circuit Judge,
with whom MAYER, Circuit Judge joins, concurring-in-part.
I agree that a finding of patent misuse is unwarranted on this record because Prineo failed to meet its burden of showing that any agreement regarding the Lagadec patent had anticompetitive effects. Princo’s failure to make this threshold showing resolves this case. I therefore join Parts I and II-C of the majority’s opinion. As Part II-C explains, the Commission’s factual findings on this issue are supported by substantial evidence. I part ways with the majority and dissent, however, over the other contours of the patent misuse doctrine. I doubt that the doctrine is as narrow or expansive as each respectively suggests.
This case arises at the uneasy intersection of antitrust and patent law, in essence posing the novel question of whether (and if so, to what extent) patentee competitors may enter an agreement regarding the licensing of their patents. In my view, what distinguishes this case from Motion Picture Patents, Carbice Corp., Morton Salt and their progeny is that the alleged agreement concerns patents and was entered into by the patents’ respective owners. The putative agreement does not cover an unpatented product over which a patent owner is exercising control by virtue of market power or a patent licensing agreement. See Dawson Chem. Co. v. Rohm & Haas Co., 448 U.S. 176, 202, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980) (holding that the linkage of “two protected activities” in a single transaction does not constitute patent misuse); cf. Motion Picture Patents, 243 U.S. at 515-18, 37 S.Ct. 416; Carbice Corp., 283 U.S. at 31-33, 51 S.Ct. 334; Morton Salt, 314 U.S. at 491-92, 62 S.Ct. 402. Here, Philips owned the Raaymakers patents, Sony the Lagadec patent. Philips and Sony were thus presumably free to license their patents to everyone— or no one. In asserting that the precedent of the Supreme Court and our court compel a finding of patent misuse, the dissent does not address how a patent owner’s *1341 right to exclude others from using the invention could, and possibly should, affect the calculus in the antitrust and patent misuse contexts. Indeed, at first blush there seems little difference between the agreement allegedly entered into here and Sony granting an exclusive license to Philips on the Lagadec patent, which Philips then decides not to practice.
While I find it significant that the putative agreement concerned patents rather than unpatented technology, I do not share the majority’s apparent view that antitrust considerations are an entirely “different issue,” separate and apart from the question of whether there has been patent misuse. See Maj. Op. at 1330-31. Whether use of a patent runs afoul of antitrust law seems in itself probative of whether the patent owner has also abused, or “misused,” the limited monopoly granted by Congress. See U.S. Gypsum Co. v. Nat’l Gypsum Co., 352 U.S. 457, 468, 472, 77 S.Ct. 490, 1 L.Ed.2d 465 (1957); Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 667, 64 S.Ct. 268, 88 L.Ed. 376 (1944); cf. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 134-35, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (asking whether there had been patent misuse in determining whether the patentee had violated antitrust law); Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 640-41, 67 S.Ct. 610, 91 L.Ed. 563 (1947). Moreover, I do not read Supreme Court precedent as necessarily foreclosing a finding of patent misuse based at least in part on finding an antitrust violation. As the Supreme Court explained in United States v. United States Gypsum Co., 333 U.S. 364, 400, 68 S.Ct. 525, 92 L.Ed. 746 (1948), patents “grant no privilege to their owners of organizing the use of those patents to monopolize an industry through price control.” The majority’s limited focus on the Raaymakers patents seems to ignore that the challenged agreement could just as easily be framed as a decision to license some patents (Raaymakers) and an affirmative refusal to license another (Lagadec). By asking only whether the Raaymakers patents has been “leveraged,” see Maj. Op. at 1327, the majority may have unnecessarily narrowed the patent misuse inquiry — particularly when one can readily argue that the combined effect of an agreement to license the Raaymakers patents, but not license the Lagadec patent, enabled Philips to obtain the type of “market benefit beyond that which inheres in the statutory patent right” of either patent, amounting to misuse. Mallinckrodt, 976 F.2d at 704; cf. Hartford-Empire Co. v. United States, 323 U.S. 386, 406-07, 65 S.Ct. 373, 89 L.Ed. 322 (1945).
Because we need not reach the issue, I would thus reserve judgment on the precise metes and bounds of the patent misuse doctrine.