**HYDRANAUTICS, Plaintiff–Appellant,**

v.

**FILMTEC CORPORATION, Defendant–Appellee.**

No. 93–56426.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1995.

Decided Nov. 15, 1995.

**534**

Carl W. Schwarz, McDermott, Will & Emery, Washington, DC, for plaintiff-appellant.

James R. Martin, Gibson, Dunn & Crutcher, Los Angeles, California, for defendant-appellee.

Before: SCHROEDER and KLEINFELD, Circuit Judges, and KING, District Judge.*

KLEINFELD, Circuit Judge:

We must decide whether an antitrust claim is a compulsory counterclaim in a prior patent infringement suit. We conclude that it is not, and reverse the district court's dismissal of the complaint.

### I. Facts.

Under the Saline Water Conversion Act of 1971, the government was to contract for water desalinization research. Title to any inventions resulting from the research was to vest in the United States, and any patents were to be issued to the United States, in order to make discoveries available to the general public. *FilmTec v. Hydranautics*, 982 F.2d 1546, 1547–48 (Fed.Cir.1992). The government would pay scientists to do research, and the benefits were to go to the general public, not just to the researchers.

A scientist named John Cadotte was employed by a non-profit institution to perform desalinization research under a research contract with the government made pursuant to the Saline Water Conversion Act. *Id.* at 1548. While so employed, he conceived of three new types of membranes for reverse osmosis desalinization. *Id.* at 1548–49. The nonprofit research institution did not report Mr. Cadotte's findings to the government. *Id.* Mr. Cadotte and others at the nonprofit formed a for-profit corporation, FilmTec, and left the nonprofit. *Id.* Mr. Cadotte then essentially duplicated at his new for-profit corporation the experiments he had carried out at the nonprofit, with a slight refinement. He obtained a patent, assigned to FilmTec, on the reverse osmosis membranes so developed. *Id.*

Hydranautics subsequently began manufacturing similar membranes. FilmTec sued

* The Honorable Samuel P. King, Senior United States District Judge, for the District of Hawaii, sitting by designation.

Hydranautics for patent infringement, and won in district court. *Id.* The district court held that FilmTec's patent was valid, and that Hydranautics had willfully infringed it. *Id.* The district court issued a permanent injunction for the statutory term of Film-Tec's patent prohibiting Hydranautics from making or selling the patented films.

The Federal Circuit reversed. *Id.* at 1550–54. The basis for the reversal was that the 1971 Saline Water Conversion Act required that any "patents . . . resulting from such research developed by Government expenditure will . . . be *available to the general public.*" *Id.* at 1550 (alteration in original) (quoting Saline Water Conversion Act of 1971, Pub.L. No. 92–60, 85 Stat. 159 (1971)). The Federal Circuit held that "Congress intended that inventions made under the Contract be available to the 'general public,' of which Hydranautics is a member." *Id.* at 1551. The Federal Circuit concluded as a matter of law that the patented invention was conceived while Mr. Cadotte was employed on the government research contract at the nonprofit research institution. *Id.* at 1551–54.

Mr. Cadotte had testified that he was not particularly encouraged by his November experiments, while he was at the nonprofit, and did not even remember them when he reacted the same substances in the same manner, in the same proportions, for the same amount of time, but with a reduced drying temperature, three months later, in February. *Id.* at 1553. The Federal Circuit did not reach the question of fact regarding intentional fraud, "difficult as it is for us to understand how February experiments on the same compositions were not a direct sequel to the experiments three months earlier." *Id.* Review of this factual determination was not necessary to the holding, because "when the invention was conceived by Mr. Cadotte, title to that invention immediately vested in the United States by operation of law." *Id.* at 1553.

After winning a reversal of the patent infringement judgment, Hydranautics sued FilmTec in a separate lawsuit in district court, for antitrust violations. The complaint in this second lawsuit is the one before us.

It was filed under the Clayton and Sherman Acts, 15 U.S.C. §§ 15, 26 and 15 U.S.C. § 2, alleging that FilmTec had engaged in "predatory" patent litigation. The district court dismissed it as failing to state a claim upon which relief could be granted, under Federal Rule of Civil Procedure 12(b)(6).

The complaint, filed in March of 1993, alleges that until September 1991, Hydranautics made reverse osmosis membranes of the patented type, but from the time the permanent injunction in the infringement suit issued, in September 1991, until the mandate was spread from the Federal Circuit decision in April 1993, it had been prevented from doing so. Another company, Allied–Signal, had also made such membranes, and had been enjoined from continuing to do so in 1990. FilmTec had sued Allied–Signal as well as Hydranautics for infringement. *FilmTec,* 982 F.2d at 1549 & n. 2.

Hydranautics' complaint alleges that Film-Tec engaged in predatory acts. The alleged predatory acts were that: (1) FilmTec had applied for a patent on the reverse osmosis membrane when it knew that the United States owned the patent; (2) FilmTec falsely told the government that the invention had first been conceived after Mr. Cadotte left the non-profit and joined FilmTec; (3) Film-Tec sued Hydranautics for patent infringement, and obtained injunctions to drive it out of the reverse osmosis membrane market, in bad faith, without any reasonable belief that it owned the patent.

The district court dismissed Hydranautics' complaint, holding that it was barred because it should have been raised as a compulsory counterclaim in the patent infringement action.

## II. Analysis.

We review a 12(b)(6) dismissal *de novo. Everest and Jennings v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* at 229. A complaint should not be dismissed unless it appears beyond doubt that plaintiff

can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

## A. *Compulsory Counterclaim*

■ It was permissible for Hydranautics to delay suing FilmTec for predatory patent litigation until it had succeeded in defeating the infringement case. The Supreme Court in *Mercoid Corp. v. Mid–Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), said that "the fact that [an antitrust counterclaim for damages] might have been asserted ... in the prior suit ... does not mean that the failure to do so renders the prior judgment *res judicata* as respects it." *Mercoid*, 320 U.S. at 671, 64 S.Ct. at 274. A claim that patent infringement litigation violated an antitrust statute is a permissive, not a mandatory, counterclaim in a patent infringement case, and is not barred in a subsequent suit by failure to raise it in the infringement suit. *See Id.* at 669–71, 64 S.Ct. at 272–74.

■ An answer must state as a counterclaim a claim which "arises out of the same transaction or occurrence" as the plaintiff's claim:

> (a) **Compulsory counterclaims.** A pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. . . .
>
> (b) **Permissive counterclaims.** A pleading *may* state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed.R.Civ.P. 13. If a party has a counterclaim which is compulsory and fails to plead it, it is lost, and cannot be asserted in a second, separate action after conclusion of the first. *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 854 (9th Cir.1981).

■ We determine whether a claim arises out of the same transaction or occurrence by analyzing "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir.1978)).

While there may be cases where resolving both issues at once is preferable, *Mercoid* leaves open the possibility of raising antitrust claims as permissive counterclaims in an infringement action, or in a separate and subsequent action.

In many cases even if the antitrust counterclaim were asserted by counterclaim, the court would sever the issues and resolve the infringement case first. The evidence for patent infringement and antitrust damages may differ considerably, depending on the particulars of the case. If the plaintiff wins the patent infringement suit, then the antitrust counterclaim may ordinarily be disposed of expeditiously on motion, instead of by a time consuming and expensive trial.

The distinctiveness between the facts giving rise to the patent and those giving rise to the antitrust claims is suggested by the different appellate paths Congress has provided for those two kinds of claims. Appeals from patent infringement decisions now go to the Federal Circuit, but appeals from antitrust decisions go to the regional circuit in which the district court sits. *See* 28 U.S.C.S. §§ 1291–1295; 15 U.S.C.S. § 15(a). If the antitrust counterclaim were treated as compulsory, then any appeal of the antitrust decision would go to the Federal Circuit, not the regional circuit. This may generate a difference between the antitrust law generally applicable within each regional circuit, and antitrust law in predatory patent infringement cases. That Congress has provided for regional courts of appeals to decide antitrust appeals, and for the federal circuit to decide patent appeals, suggests that Congress perceived a distinction between the kinds of facts giving rise to one or the other.

The antitrust claim attacks the patent infringement lawsuit itself as the wrong which furnishes the basis for antitrust damages. This is somewhat analogous to a civil claim for malicious prosecution. It is usually held

that a malicious prosecution claim cannot be asserted as a counterclaim to the original suit which furnishes its predicate. 1 Harper, James & Gray, The Law of Torts § 4.8 (2d ed. 1986). *Mercoid* is consistent with this approach, and we see no reason to distinguish *Mercoid* from the case at bar.

In this case, Hydranautics claims that FilmTec was not entitled to a patent, fraudulently obtained one, and used it to run competition out of the market. The issue of whether FilmTec owned the patent was resolved in the infringement case, and is logically a part of both cases. That identity of issues, by itself, suggests compulsory counterclaim classification.

But there was not much point in litigating Hydranautics' antitrust claims until FilmTec's infringement case was resolved. The Federal Circuit held that the government owned the patent on the reverse osmosis membrane, not FilmTec, because Mr. Cadotte had conceived the invention while working for the non-profit on the government contract. Thus the patent infringement judgment was vacated on the ground that FilmTec did not own the patent, without a determination whether FilmTec had fraudulently obtained the patent. Because the Federal Circuit did not decide whether FilmTec obtained its patent fraudulently, the district court will now begin the antitrust case with a blank slate on the fraud issue. If an appellate court reverses and vacates a judgment, the party which prevails on appeal is generally not bound by adverse trial court rulings on other issues. *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1077 (2d Cir.1977). This difference in which facts control shows why there may be a significant difference, and there is a significant difference in this case, between the facts which control the patent infringement claim and the facts which control the antitrust claim.

### B. Noerr–Pennington *Immunity*

█ Both parties agree that we may also affirm the dismissal of Hydranautics' complaint if we conclude that FilmTec is immune from this antitrust action under the rationale of *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *Accord United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *Noerr,* the Supreme Court held that no violation of the Sherman Act may be predicated upon the defendant's attempts to influence the passage or enforcement of laws. *Noerr,* 365 U.S. at 135, 81 S.Ct. at 528. That principle was expanded to include access to courts and administrative agencies in *California Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972).

FilmTec claims that it is immunized from an antitrust lawsuit by the *Noerr–Pennington* doctrine. Hydranautics disagrees. The district court did not reach this issue, but FilmTec urges us to affirm the district court dismissal on this ground, on the theory that if the issue of *Noerr–Pennington* immunity had been reached, it would have to have been decided on the pleadings in favor of FilmTec. We conclude that this disagreement could not properly be resolved against Hydranautics on the basis of the pleadings. The outcome will depend on evidence. We therefore cannot affirm on this ground.

Application of the *Noerr–Pennington* doctrine to antitrust claims has recently been clarified by *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) and our application of that decision in *Liberty Lake Investments, Inc. v. Magnuson,* 12 F.3d 155 (9th Cir.1993). *Columbia Pictures* holds that litigation cannot be deprived of its antitrust immunity as a sham unless it is objectively baseless, regardless of whether the subjective intent of the litigation is to interfere with competition. "[U]nless a lawsuit is objectively baseless, whether an antitrust defendant 'was indifferent to the outcome on the merits' of the suit, or 'had decided to sue primarily for the benefit of collateral injuries inflicted through the use of legal process' is immaterial." *Liberty Lake,* 12 F.3d at 159.

FilmTec's theory is that its patent infringement lawsuit could not have been "objectively baseless," because FilmTec won in district court. FilmTec argues that its initial victory requires dismissal of antitrust claims

based upon FilmTec's ultimately unsuccessful patent infringement lawsuits, regardless of whether it obtained the patents fraudulently. The holdings in *Columbia Pictures* and *Liberty Lake* leave open the question of whether an infringement action based on a fraudulently obtained patent is "objectively baseless." Footnote six in *Columbia Pictures* says the court does "not decide here whether, and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." *Id.* at ——, n. 6, 113 S.Ct. at 1929, n. 6.

*Columbia Pictures* cites *Walker Process Equip., Inc. v. Food Machinery and Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) in footnote 6. In *Walker Process*, the Court held that proof of the claim that the patent holder obtained its patent by knowingly and willfully misrepresenting facts to the Patent Office "would be sufficient to strip [the patent holder] of its exemption from the antitrust laws." *Walker Process*, 382 U.S. at 177, 86 S.Ct. at 350. It further held that "enforcement of a patent procured by fraud on the Patent Office may be violative" of the Sherman Act and subject the defendant to treble damages under the Clayton Act. *Id.* at 174, 86 S.Ct. at 349. *See also California Motor Transport*, 404 U.S. at 512–13, 92 S.Ct. at 613 ("Use of a patent obtained by fraud to exclude a competitor from the market may involve a violation of the antitrust laws....").

We said in dictum in *Liberty Lake* that "[i]n a case involving a fraudulently obtained patent, that which immunized the predatory behavior from antitrust liability (the patent) is, in effect, a nullity because of the underlying fraud." *Liberty Lake*, 12 F.3d at 159. We now are faced with deciding whether the dictum in *Liberty Lake* is good law, and we conclude that it is, at least where the fraud is intentional, not "technical fraud." *See* Justice Harlan's concurrence in *Walker Process*, 382 U.S. at 179, 86 S.Ct. at 351, cited in footnote 6 of *Columbia Pictures.*

■ *Columbia Pictures* explains that "probable cause" to institute legal proceedings, in the sense in which the phrase is used in tort suits for malicious prosecution of civil claims, establishes that the litigation is not "objectively baseless." At common law, a reversed judgment for the plaintiff in the first action usually is not conclusive as to probable cause in the malicious prosecution action, where the judgment was obtained by fraud. *See* 1 Harper, James & Gray, The Law of Torts § 4.8 (2d ed. 1986); W. Page Keeton et al., Prosser & Keeton on Torts 894 (5th ed. 1984). If the patent was obtained by "intentional fraud," and not merely "technical fraud," *see Walker Process*, 382 U.S. at 176, 179, 86 S.Ct. at 350, 351, then a reversed judgment based upon that fraud, where the plaintiff obtained the patent by intentional fraud or was an assignee who knew of the patent's infirmity, would not demonstrate probable cause for a patent infringement suit. *See Walker Process*, 382 U.S. at 177, 86 S.Ct. at 350.[1]

Hydranautics asserts facts in its complaint that, if true, would prove that FilmTec obtained its patent by fraud. Its complaint

---

1. While we were considering this opinion, we learned that the Federal Circuit decided a parallel case, *Filmtec Corp. v. Hydranautics*, 67 F.3d 931 (Fed.Cir.1995) (petition for rehearing pending). In that case, the district court had denied Hydranautics' motion for leave to amend its answer to the patent infringement case to assert an antitrust counterclaim, because the motion came too late. The case had gone through judgment, appeal, and spreading of the appellate mandate, before the motion to amend was filed. The Federal Circuit held that the delay was excusable, because until Hydranautics defeated the patent claim, it had good reason not to file the antitrust claim. The Federal Circuit nevertheless affirmed· the denial of leave to amend, because the antitrust claim would have been futile under the *Noerr–Pennington* doctrine.

We do not decide whether the case at bar is distinguishable, on the ground that FilmTec's alleged fraud would render FilmTec's patent infringement claim objectively baseless. The Federal Circuit held that as a matter of law, FilmTec's case was not objectively baseless, but said "there is no dispute over the facts." In the procedural posture of the case before us, it would not be correct to say that there is no dispute as to the facts. Hydranautics alleges fraud, and FilmTec denies it. We must assume for the purposes of Rule 12(b)(6) that Hydranautics could prove that FilmTec obtained the patent fraudulently. Nor do we decide whether the issue of objective baselessness is *res judicata*, on account of the Federal Circuit case. These questions should, if raised on remand, be decided in the first instance by the district court.

therefore cannot be dismissed short of summary judgment or trial.

REVERSED and REMANDED.