Honorable Mike K. Nakagawa, United States Bankruptcy Judge
On June 26, 2018, the court heard argument regarding GLAS USA LLC's Motion Pursuant to 11 U.S.C. § 362(d) for Relief from the Automatic Stay ("362 Motion"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.
BACKGROUND
On May 18, 2017, the above-captioned involuntary Chapter 11 proceeding was commenced by the filing of an involuntary Chapter 11 petition ("Involuntary Petition") against alleged debtor EB Holdings II, Inc. ("EBH").[2] The Involuntary Petition was filed on behalf of seven entities[3] : (1) GLAS in its capacity as Administrative Agent on behalf of each of the "PIK Lenders," (2) GoldenTree Master Fund, Ltd. ("GoldenTree"), (3) Kneiff Tower SARL, *12 (4) Mount Kellett Master Fund II-A, LP, (5) Grace Bay III Holdings S.a.r.l., (6) Arvo Investment Holdings S.a.r.l., and (7) Sound Point Montauk Fund, L.P. (collectively "Petitioning Creditors").
On June 27, 2017, the bankruptcy court entered an order approving a stipulation for relief from the automatic stay to permit all of the parties to two coordinated civil actions pending in the Eighth Judicial District Court, Clark County, Nevada ("Nevada State Court"),[4] to continue with the litigation, as well as any appeals ("Stipulated RAS Order"). (ECF No. 97).
On July 6, 2017, a "Limited Statement of LEG Q LLC in Support of Involuntary Chapter 11 Petition under Section 303 of the Bankruptcy Code" ("LEG Statement") was filed by an entity described as LEG Q LLC ("LEG").[5] (ECF No. 106).
On July 20, 2017, a hearing was conducted on EBH's motion to dismiss the involuntary proceeding, or, in the alternative, to abstain ("Dismissal Motion"). (ECF No. 73). After the hearing was concluded, the Dismissal Motion was taken under submission.
On August 17, 2017, a hearing was conducted on the motion for summary judgment ("Summary Judgment Motion") brought by GLAS. (ECF No. 80). After the hearing was concluded, the Summary Judgment Motion was taken under submission.
On August 22, 2017, the PIK Lender Group filed a Notice of Clarification of the Record in Connection with the Alleged Debtor's Representation Regarding the State of the State Court Litigation at the August 17, 2017 Hearing on the Motion for Summary Judgment filed by GLAS USA LLC ("Clarification Notice"). (ECF No. 181).
On August 30, 2017, EBH filed a response to the Clarification Notice. (ECF No. 187).
On August 30, 2017, GLAS filed a motion to reopen the record in connection *13 with its Summary Judgment Motion. ("Motion to Reopen"). (ECF No. 188).
On August 30, 2017, GLAS filed an Ex Parte Application for Order Shortening Time to Hear Motion to Reopen the Record in Connection with GLAS USA LLC's Motion for Summary Judgment ("OST Request"). (ECF No. 190).
On August 31, 2017, EBH filed an opposition to the OST Request. (ECF No. 192).
On September 12, 2017, an order was entered striking the Clarification Notice and denying the OST Request. (ECF No. 193). The order also set a deadline for oppositions and replies to be filed in connection with the Motion to Reopen. Upon completion of the additional briefing, both the Dismissal Motion and Summary Judgment Motion were re-submitted for decision.
On December 15, 2017, a memorandum decision was entered on the Dismissal Motion ("Dismissal Decision"). (ECF No. 205). On the same date, a separate order was entered reflecting that decision ("Dismissal Order"). (ECF No. 206). For reasons set forth in the Dismissal Decision, the court denied the Dismissal Motion without prejudice, but granted EBH's alternative request to abstain under Section 305. The order specified that this involuntary proceeding is stayed "pending entry of a final judgment in the coordinated actions pending before the Eighth Judicial District Court, Clark County, Nevada, styled as Golden Tree Master Fund, Ltd., et al v. Howard Meyers, et al, Case No. A-16-742507-B, and EB Holdings II, Inc. v. Goldentree Master Fund Ltd., et al, Case No. A-16-745669-B." Dismissal Order at 1:23-28. The order also scheduled a status hearing to be conducted on May 9, 2018, and required status reports to be filed no later than May 7, 2018.[6] Along with the Dismissal Decision and the Dismissal Order, a separate order was entered denying without prejudice the Summary Judgment Motion and Motion to Reopen ("Summary Judgment Order"). (ECF No. 209).
On December 27, 2017, GLAS filed a notice of appeal of the Dismissal Order along with a motion for leave to appeal. (ECF Nos. 214, 216). Both matters were referred to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). (ECF No. 218).
On January 10, 2018, EBH filed an opposition to the motion for leave to appeal. (ECF Nos. 229, 230).
On March 30, 2018, the BAP issued an order denying leave to appeal and dismissing the GLAS appeal of the Dismissal Order for lack of jurisdiction ("BAP Order"). On April 24, 2018, copies of the BAP Order were docketed in the bankruptcy court. (ECF Nos. 243, 244).
On May 15, 2018, status reports were filed on behalf of EBH (ECF No. 254), GLAS (ECF Nos. 255, 256[7] ), and the PIK Lender Group (ECF Nos. 257, 258).[8]
On May 21, 2018, the instant 362 Motion was filed by GLAS, along with a request *14 for judicial notice ("GLAS RJN").[9] (ECF Nos. 261, 263). The motion was noticed to be heard on June 19, 2018. (ECF No. 268).[10]
On May 22, 2018, the status hearing required by the Dismissal Order was held.[11]
On June 8, 2018, EBH filed a limited opposition to the 362 Motion ("EBH Opposition"), accompanied by the Declaration of Gregory E. Garman and a request for judicial notice ("EBH RJN"). (ECF Nos. 273, 274, 275).
On June 13, 2018, an order was entered approving a stipulation to continue the hearing on the 362 Motion to June 26, 2018. (ECF No. 278).
On June 15, 2018, a joinder in the 362 Motion was filed on behalf of entities identified as Susquehanna Ireland Limited ("Susquehanna Ltd.") and NatWest Markets Plc ("Susquehanna Joinder"). (ECF No. 281).
On June 18, 2018, a reply in support of the 362 Motion was filed on behalf of GLAS ("GLAS Reply"). (ECF No. 282).
On June 22, 2018, an objection to the Susquehanna Joinder was filed on behalf of EBH. (ECF No. 284).
On June 25, 2018, EBH filed a Notice of (I) Entry of Stay Order and (II) Ruling of State Court ("Ruling Notice"). (ECF No. 285).[12]
On June 25, 2018, Susquehanna Ltd. filed a response to EBH's objection to its joinder ("Susquehanna Response"). (ECF No. 286).[13]
DISCUSSION
GLAS, along with the other Petitioning Creditors, triggered the automatic *15 stay under Section 362(a) when it filed the Involuntary Petition.[14] That action protected EBH because the automatic stay prevents, inter alia , the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Section 362(d) specifies that relief from the automatic stay may be in the form of an order "terminating, annulling, modifying, or conditioning" the stay.
GLAS now seeks relief from the automatic stay so that it "can adjudicate, in another permissible forum, the amounts owing to the Non-Party Lenders under the PIK Loan Agreement."[15] 362 Motion at 7:23-24.[16] In its written reply and at the hearing, GLAS clarified that it only seeks relief from the automatic stay so that it can commence a breach of contract action on behalf of the Non-Party Lenders in the United States District Court for the Southern District of New York ("New York Federal Court").[17]
GLAS seeks relief from stay on the basis of "cause" pursuant to Section 362(d)(1). See 362 Motion at 7:22-23. Under Section 362(d)(1), "cause" may be established for the purpose of allowing litigation to go forward in another forum. For such a purpose, courts typically apply a multi-factor test in determining whether cause exists. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280 (2nd Cir. 1990). The Sonnax court listed the following:
(1) whether relief would result in a partial or complete resolution of the *16 issues ; (2) lack of any connection with or interference with the bankruptcy case ; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors ; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation ; (11) whether the parties are ready for trial in the other proceeding ; and (12) impact of the stay on the parties and the balance of harms .
907 F.2d at 1286, citing In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (Emphasis added) ("Sonnax/Curtis Factors"). Of these twelve considerations, GLAS maintains that only Factors 1, 2, 7, 10, 11 and 12 are relevant and support its request for relief from stay. See 362 Motion at 9:1-16 & n.10.
EBH generally opposes allowing GLAS to sue for breach of the PIK Loan Agreement "in another permissible forum" if it means commencing another lawsuit outside of the State of Nevada. See EBH Opposition at 18:26 to 19:5. It argues that the Sonnax/Curtis Factors are applicable to a request to continue existing litigation against a debtor in a non-bankruptcy forum and not to a request to initiate new litigation against a debtor in a non-bankruptcy forum. Id. at 13:11 to 14:8. Moreover, even if the Sonnax/Curtis Factors are applicable, EBH maintains that GLAS has failed to demonstrate that its selected factors establish cause for relief from stay in this proceeding. Id. at 14:9 to 17:7 & n.40.
Before considering the parties' specific arguments, it is useful to consider why the parties are where they are, and, moreover, exactly where they are.
A. The Why and the Where.
Under the PIK Loan Agreement, any of the participants has authority to pursue collection of the entire obligation independent of the administrative agent and independent of any other participants. See PIK Loan Agreement, § 2.4.[18] Because of this broad authorization, the administrative agent under the PIK Loan Agreement was and is left in the unenviable position of herding kittens: it had and has no control over the direction taken by the loan participants, including commencement of the Golden Tree Action prior to the maturity date of the PIK Loan.[19] Moreover, the loan *17 participants apparently have little or no control over the direction taken by the administrative agent inasmuch as the PIK Loan Agreement also gives the administrative agent independent authority to pursue collection in its own name in the event of a maturity default. See PIK Loan Annex, § 4.08. Rather than requiring a unified approach to the collection of the PIK Loan, the PIK Loan Agreement has affirmatively permitted a chaotic arrangement where any loan participant can commence a collection proceeding in any competent court in any number of jurisdictions. This fine mess permitted by the PIK Loan Agreement certainly suggests that bringing all of the various claims into a single bankruptcy proceeding would be advantageous.[20] But the borrower under the PIK Loan Agreement has not voluntarily sought to do so and this court previously concluded that this involuntary proceeding commenced by the administrative agent should be stayed pending the outcome of the various civil actions.
To make matters worse, although the parties to the PIK Loan Agreement agreed that New York law would apply, see PIK Loan Agreement, § 30, they never agreed that all disputes would be resolved only by a New York court. See PIK Loan Agreement, § 31.1(a) (the company and lenders submit themselves "to the non-exclusive general jurisdiction of the courts of the State of New York, the courts of the United States of America for the Southern District of New York..."); PIK Loan Agreement, § 31.1(b) (to the extent allowed by law, any party to the PIK Loan Agreement also may take "proceedings in any other court" and "concurrent proceedings in any number of jurisdictions."). As a result, the contractual latitude given to all of the participants in deciding whether to pursue collection activities for the PIK Loan was not restricted by longitude: the participants could pursue such actions anywhere they could find a court of competent jurisdiction. So the participants holding the vast majority of the interests in the PIK Loan exercised their authority under the PIK Loan Agreement to pursue their claims in Nevada.
As it currently stands, the Golden Tree Action brought by twenty-eight participants in the PIK Loan against EBH and *18 other parties is pending before the Nevada State Court. Additionally, the counterclaim brought by EBH against thirty participants in the PIK Loan is pending before the Nevada State Court. As it currently stands, the EBH Action brought by EBH against thirteen participants in the PIK Loan is pending before the Nevada State Court. As it currently stands, there is an appeal pending before the Nevada Supreme Court, which previously resolved other appeals from interlocutory rulings in the Golden Tree Action and the EBH Action.
As it currently stands, the above-captioned involuntary Chapter 11 case brought by GLAS, joined by six petitioners that also are named parties in the Golden Tree Action and the EBH Action, is pending before this Nevada bankruptcy court. There also was a prior appeal of this court's Dismissal Order taken by GLAS to the BAP.
As it currently stands, the EBH-GLAS Action brought by EBH against GLAS in the Nevada State Court is pending before the United States District Court for the District of Nevada ("Nevada Federal Court") as a result of the removal petition filed by GLAS.[21]
So this is where the parties are: two civil actions pending before the Nevada State Court, an appeal arising from those actions pending before the Nevada Supreme Court, a third civil action pending in the Nevada Federal Court, and one involuntary Chapter 11 case pending in the Nevada bankruptcy court.
B. Consideration of the Sonnax/Curtis Factors.
GLAS maintains that only six of the twelve Sonnax/Curtis Factors are relevant and all support a finding of cause for relief from stay. See 362 Motion at 9:5-17. EBH disagrees.
1. Partial or Complete Resolution of the Issues.
Commencement of another federal civil action in the New York Federal Court begs the question of why GLAS should be permitted to pursue a second federal civil action on the other side of the country, the fourth civil action overall, when it already has authority under the PIK Loan Agreement to bring the same breach of contract claim in Nevada. Under Civil Rule 13, an answer to a complaint must state any counterclaim against the opposing party that (a) arises out of the transaction that is the subject of the opposing party's claim, and (b) does not require adding another party over whom the court cannot acquire jurisdiction. See FED.R.CIV.P. 13(a)(1). See, e.g., Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1249 (9th Cir. 1987) (claims that were not asserted as compulsory counterclaims in prior state court action dismissed in subsequent federal action). This compulsory counterclaim requirement has two exceptions: when the counterclaim already is the subject of another pending action, or, where personal jurisdiction over the counterclaimant has not been established. See FED.R.CIV.P. 13(a)(2) (A and B). In the EBH-GLAS Action, both the declaratory relief claim of EBH, as well any breach of contract claim of GLAS, would arise out of the PIK Loan *19 Agreement and would not require the addition of another party. GLAS has asserted repeatedly that it is not a party to the pending State Court Actions and it already has appeared in the State of Nevada as a petitioner in the instant Chapter 11 proceeding. Thus, it appears that Civil Rule 13 obligates GLAS to assert against EBH any breach of contract claim in the EBH-GLAS Action.[22] Compare Hydranautics v. FilmTec Corp., 70 F.3d 533, 536 (9th Cir. 1995).
By contrast, because of the first exception under Civil Rule 13(a)(2), any response by EBH to a breach of contact claim filed by GLAS in the New York Federal Court presumably would not require EBH to plead the claims for declaratory relief that already have been asserted in the EBH-GLAS Action. Even if EBH would be subject to personal jurisdiction in the New York Federal Court, perhaps due to Section 31.1(a) of the PIK Loan Agreement, it apparently would be permitted but not required to assert its declaratory relief claims. See Union Paving Co. v. Downer Corp., 276 F.2d 468, 470 (9th Cir. 1960) ; Fidelity Nat. Title Co. v. U.S. Small Business Admin., 2014 WL 1883939, at *5 (E.D. Cal. 2014).[23] As a result, unless the EBH- GLAS Action is dismissed, commencement of an additional federal civil action in the New York Federal Court might not result in a complete resolution of the issues between GLAS and EBH. This factor does not favor relief from stay.
2. Connection with or Interference with the Bankruptcy Case.
Commencement of another civil action in the New York Federal Court bears an obvious connection with the instant involuntary Chapter 11 proceeding, but GLAS is correct that it would cause little interference with this bankruptcy case because this court has stayed further proceedings. See 362 Motion at 10:3-8. This situation, however, appears to be entirely the making of GLAS and the Petitioning Creditors, who have opted not to voluntarily dismiss the involuntary case apparently out of concern for any damages that EBH would seek under Section 303(i).[24] This factor is more neutral than supportive of relief from stay.
3. Prejudice to the Interests of Other Creditors.
Commencement of another civil action in the New York Federal Court would be for the benefit only of the minority of loan *20 participants constituting the Non-Party Lenders, apparently including Susquehanna Ltd. Meanwhile, the Golden Tree Parties and other loan participants named in the State Court Actions are subject to the determinations made by the Nevada State Court. Additionally, all of the participants in the PIK Loan, including the Non-Party Lenders and the Golden Tree Parties, are impacted by the determinations sought from the Nevada Federal Court in the EBH-GLAS Action.[25]
A final judgment entered by the Nevada State Court, the Nevada Federal Court, or the New York Federal Court may be in favor of the PIK Lenders or EBH. So far, the Golden Tree Group does not have a record of success in the State Court Actions. If GLAS achieves similar success in another civil action New York Federal Court, the prejudice to the Golden Tree Group could be substantial. Given the record before this bankruptcy court, it is difficult to assess the degree, if any, of legal prejudice to the interests of other creditors, i.e., the Golden Tree Group, which would arise if relief from stay is granted. As the burden of persuasion rests with GLAS as the moving party, the court concludes that this factor is neutral at best.
4. Interests of Judicial Economy, and Expeditious and Economical Resolution.
Commencement of another civil action in the New York Federal Court adds to the number of civil proceedings filed in federal court, lengthens the process of resolving issues between the parties, and, absent some uncharacteristic pro bono arrangement, would cost more money rather than save money. This factor weighs heavily against the instant request for relief from stay.
5. Readiness for Trial.
Commencement of another civil action in the New York Federal Court certainly would require the filing and service of a new complaint, as well as the opportunity to file a response. Even GLAS concedes that there likely would be an early skirmish over the application of the first filed rule. Additionally, even if GLAS convinces the New York Federal Court not to apply the first filed rule, see discussion at note 23, supra, nothing prevents EBH from requesting the Nevada Federal Court to enjoin GLAS from further proceeding in the subsequent New York action. See, e.g., Butte Min. PLC v. Smith, 15 F.Supp.2d 965 (D.Mont. 1992) (federal district court enjoined a defendant from proceeding on a claim in a later foreign proceeding that should have been asserted as a compulsory counterclaim).
GLAS suggests that this factor "is irrelevant here where this [involuntary bankruptcy] case is already stayed pending a resolution of the State Court Litigation, and where EB Holdings has only just now initiated [the EBH-GLAS Action]." 362 Motion at 10:21-22. The false equivalency of this argument, however, simply supports EBH's contention that relief from stay under the Sonnax/Curtis Factors is intended to apply to existing litigation rather than the commencement of new litigation. Moreover, because GLAS does not even suggest that it is remotely ready to go to trial of its breach of contract claim, it not only militates against relief from stay under the Sonnax/Curtis Factors, but suggests that "a bona fide dispute as to liability or amount" of the Non-Party Lenders *21 claims does exist under Section 303(b)(1).[26] That GLAS also makes no suggestion that its breach of contract claim is capable of resolution by summary judgment casts additional doubt on its current request for relief. This factor is relevant and also weighs against relief from stay.
6. Impact on the Parties and the Balance of Harms.
Commencement of another civil action in the New York Federal Court would involve the same parties, the same contract, the same procedural rules, and the same substantive law, but a different Article III judge.[27] At present, the automatic stay arguably prevents GLAS from asserting its counterclaim for breach of contract in the EBH-GLAS Action, but even EBH concedes that GLAS should be allowed to defend the action. Assertion of its breach of contract claim in the EBH-GLAS Action minimizes any impact whatsoever from the presence of the automatic stay. Moreover, to the degree that GLAS rejects any suggestions of "forum shopping," compare EBH Opposition at 2:7-12 with GLAS Reply at 6:2 to 7:12, a solution of that suggestion is found in the PIK Loan Agreement itself.
As previously discussed at 17-18, supra, the parties to the PIK Loan Agreement agreed that New York law would apply in the event of a dispute. The parties also agreed to submit themselves to the jurisdiction of state and federal courts in New York to resolve such disputes. They also agreed that jurisdiction in New York would be "non exclusive" rather than exclusive. But the parties to the PIK Loan Agreement did not stop there. They also agreed that "a Party," which by definition includes any party to the PIK Loan Agreement, may pursue proceedings "in any other court" as well as "concurrent proceedings in any number of jurisdictions." So it *22 appears that while the parties to the PIK Loan Agreement accepted the idea of New York courts resolving any disputes, the parties did not insist upon it, and also affirmatively agreed to allow actions to be filed in any other court[28] even if there are concurrent proceedings in other jurisdictions. In other words, parties to the PIK Loan Agreement apparently are permitted to "shop" for any court that will assert jurisdiction over the dispute, as long as New York law is applied.
There is no dispute that the GoldenTree Group chose the Nevada State Court to commence legal proceedings against EBH to enforce the PIK Loan Agreement, rather than suing in New York or any other place in the world.[29] If the Golden Tree Group had sued EBH in a court in New York, the language of Section 31.1(a) would have barred EBH from objecting to venue or asserting the doctrine of forum non conveniens . But the GoldenTree Group made its permitted choice under the PIK Loan Agreement and, consistent with the choice of law provision, is relying on New York law before the Nevada State Court. See Dismissal Decision at 7 n.19 and 11 n.31. Similarly, GLAS has asked this bankruptcy court to apply the laws of states other than Nevada to reject EBH's theory that the Petitioning Creditors' claims are subject to dispute. See Dismissal Decision at 6 n.15. Not surprisingly, GLAS has not suggested that the assigned Nevada federal judge is less qualified or less capable than a New York federal judge of interpreting and applying New York law to a breach of contract claim. Under these circumstances, the impact of the automatic stay on GLAS is minimal: it can fully assert its breach of contract claim in the existing EBH-GLAS Action, or possibly by intervening in the State Court Actions, with no change in the applicable law.[30]
The balance of harms is equitable in nature. In both its written and oral argument, GLAS has painted itself as the victim of the bankruptcy process and has accused EBH of using the automatic stay as a strategic "sword" to rebuff collection efforts rather than a protective "shield" to foster reorganization. See 362 Motion at *23 8:7-22 and 11:8-19; GLAS Reply at 2:10-12, 5:23-25, 6:4-10, and 6:27 to 7:2. GLAS maintains that its request to commence an additional civil action in New York:
...is premised on the unique circumstances of this case. It is uncommon for an involuntary case to sit in a state of suspension for over thirteen (13) months without a resolution of the petitioning creditors' claims (and which suspension will undoubtedly continue for many months), and it is uncommon for the debtor to be preemptively suing creditors in state court in an effort to continue the state of suspension that is preventing that resolution. Finally, it is certainly unusual that a debtor who never wanted the benefits of chapter 11 (like the automatic stay) and was forced into chapter 11 involuntarily would now use that automatic stay in an effort to play 'first filed' games with creditors.
GLAS Reply at 9:10-17 (emphasis added).
The "unique circumstances" of this proceeding previously was noted by this court. See Dismissal Decision at 26:16 to 27:1 & n. 69. The unique circumstances are the reason why this involuntary proceeding has been suspended. That a borrower with the controlling interest in the world's largest producer of lead would contest an involuntary bankruptcy petition brought by its lenders is not shocking.[31] That an involuntary petition would be filed while six of the seven petitioning creditors are embroiled in a lawsuit they initiated, in which the validity and amount of their claims are contested by the borrower, is shocking. That an alleged debtor in such circumstances would commence an additional action against the seventh petitioning creditor, in the same forum chosen by the other six petitioning creditors, is not shocking. That the seventh petitioning creditor, whose mere bankruptcy petition resulted in the automatic stay, see discussion at note 14, supra, would blame its predicament on the alleged debtor, is even more shocking.
The admittedly unique circumstances undercut the persuasiveness of the various cases cited by GLAS. In its opposition, EBH sufficiently distinguished most of them. See EBH Opposition at 11:4 to 12:17. At the hearing, however, GLAS argued that three specific cases cited in its written argument, see 362 Motion at 9 n.9 and 11:8-19 and GLAS Reply at 10:6-11,[32] were not addressed by EBH and are most like the situation before this court. GLAS is incorrect.
All of the cases on which GLAS relies were voluntary Chapter 11 bankruptcy proceedings commenced by an operating entity in which a creditor sought relief from stay for cause under Section 362(d)(1). In Burger Boys, the Chapter 11 debtor commenced an adversary proceeding for damages against its landlord even though the debtor had counterclaimed for damages in the landlord's pre-bankruptcy eviction action. The bankruptcy court concluded that it did not have core jurisdiction to grant complete relief on all of the claims in the adversary proceeding and therefore abstained. Because it abstained, the court then concluded that cause for relief from *24 stay existed inasmuch as complete relief could be granted in the pre-bankruptcy eviction action. On appeal, the district court affirmed. In Frigitemp, the bankruptcy trustee for the Chapter 11 debtor commenced "six different proceedings in four different places" against a creditor that had commenced pre-bankruptcy actions arising from the same transaction. 8 B.R. at 289. The bankruptcy court granted relief from stay so that the parties could proceed with the creditor's pre-bankruptcy federal civil action for legal and equitable relief, including the debtor's counterclaim for breach of contract. On appeal, the district court affirmed. In Abeinsa, the Chapter 11 debtor was the subject of an arbitration proceeding commenced in Oregon under a construction contract. The debtor's international parent company was the subject of a cross-border proceeding under Chapter 15. The debtor's sureties on a performance bond, guaranteed by the parent company, also were the subject of federal litigation commenced by the parent in Oregon. Both the construction contract and the guaranty provided for exclusive jurisdiction in Oregon. The Delaware bankruptcy court granted relief from stay so that the creditor could proceed with either the commercial arbitration or the federal civil litigation, or both, in Oregon.
In short, the cases emphasized by GLAS are not like the current situation at all. Moreover, this involuntary proceeding does not reflect a strategy by EBH to use the automatic stay as a shield or a sword. In response to the Golden Tree Action, EBH could have commenced a voluntary Chapter 11 proceeding, but apparently chose not to do so. If that had been EBH's strategy, the Petitioning Creditors could have sought dismissal under Section 1112(b)(1), see, e.g., Marsch v. Marsch (In re Marsch), 36 F.3d 825 (9th Cir. 1994) (dismissal of Chapter 11 filed to avoid posting appeal bond for an adverse state court judgment), or the appointment of a Chapter 11 trustee. See 11 U.S.C. § 1104(a)(1).[33] Instead, EBH has chosen, to the dismay of the Petitioning Creditors, to contest the Involuntary Petition and to accept the shield handed to it by the same creditors. Whether the same Petitioning Creditors also handed EBH a sword in the form of a claim under Section 303(i) has been preserved for another day.[34] Under these circumstances, the balance of harms does not support relief from stay so that GLAS can file another civil action in the Southern District of New York. Thus, both components of this final factor do not weigh in favor of the moving party.
Based on the foregoing, application of the Sonnax/Curtis Factors to the record before this court does not support a finding of sufficient cause under Section 362(d)(1) to permit GLAS to commence another civil action. The court also concludes, however, that sufficient cause exists to permit GLAS to respond to the complaint filed by EBH in the EBH-GLAS Action.
IT IS THEREFORE ORDERED that GLAS USA LLC's Motion Pursuant to 11 U.S.C. § 362(d) for Relief from the Automatic *25 Stay, Docket No. 261, be, and the same hereby is, GRANTED IN PART and DENIED IN PART .
IT IS FURTHER ORDERED that GLAS USA LLC is GRANTED relief from stay to file a response including a counterclaim for breach of contract, in connection with the civil action styled as EB Holdings II, Inc. v. GLAS USA, LLC, denominated Case No. 2:18-cv-01096-APG-CWH, pending in the United States District Court for the District of Nevada.
IT IS FURTHER ORDERED that GLAS USA LLC is DENIED any other relief from stay in connection with the above-captioned involuntary Chapter 11 proceeding.

EBH is incorporated in the State of Nevada. See Corporate Ownership Statement. (ECF No. 27). EB Holdings, Inc., a Delaware corporation, was the borrower under a certain "PIK Loan Agreement" dated March 23, 2007. See Exhibit "A" to Statement of Petitioning Creditor GLAS USA LLC, in its Capacity as Administrative Agent, in Support of Involuntary Petition under Section 303 of the Bankruptcy Code ("GLAS Statement"). (ECF No. 3). The last 46 pages of the PIK Loan Agreement consist of an "Annex" setting forth various additional terms governing the agreement ("PIK Loan Annex"). According to the PIK Loan Agreement, EB Holdings, Inc. borrowed €600,000.00 from Credit Suisse International and Citibank N.A., New York Branch, with Credit Suisse, London Branch ("Credit Suisse") named as the administrative agent. EBH apparently is the successor in interest to EB Holdings, Inc.

Numerous documents were filed concurrently with the Involuntary Petition. The GLAS Statement indicates that GLAS is the successor in interest to Credit Suisse, as the result of an assignment dated May 17, 2017. See GLAS Statement at 2:15-23. All of the Petitioning Creditors, including GLAS, filed a disclosure required by FRBP 1010(b) and FRBP 7007.1 (ECF Nos. 4, 8, 11, 14, 17, 21, and 24) along with declarations of their representatives under FRBP 1003(a). (ECF Nos. 5, 7, 10, 12, 15, 19, and 22). An additional "Statement of the PIK Lender Group in Support of Their Involuntary Chapter 11 Petition under Section 303 of the Bankruptcy Code" ("PIK Lender Group Statement") was filed. (ECF No. 6). The PIK Lender Group apparently holds approximately 77 percent of the principal issue face amount of the "PIK Loan." The PIK Lender Group is an unofficial collective that consists of the following six entities: GoldenTree Asset Management LP, Alcentra Limited, Fortress Investment Group/Mount Kellet Capital Management, HIG Capital International Advisors LLP/Bayside Capital, Sound Point Capital Management, LP, and Varde Partners Europe Limited. The six entities apparently are, or are affiliates of, the managers and/or advisors of the funds and/or accounts that hold beneficial interests in the PIK Loan. See PIK Lender Group Statement at 2 n.1.

On August 26, 2016, Golden Tree Master Fund, Ltd., et al v. Howard Meyers, et al, was commenced in Nevada State Court, denominated case no. A-16-742507-B ("Golden Tree Action"). With the exception of GLAS, all of the Petitioning Creditors appear to be named plaintiffs in the GoldenTree Action. The participants in the PIK Loan who commenced the GoldenTree Action are commonly referred to as the "GoldenTree Group," but may also be referred to as the GoldenTree Plaintiffs" or "GoldenTree Parties" as the context requires in this Order. Defendants named in the Golden Tree Action include EBH, its principal, Howard Meyers ("Meyers"), Eco-Bat Technology Ltd. ("Eco-Bat"), Quexco Inc., and others. On October 24, 2016, EB Holdings II, Inc. v. Goldentree Master Fund Ltd., et al, was commenced in Nevada State Court, denominated case no. A-16-745669-B ("EBH Action"). With the exception of GLAS, all of the Petitioning Creditors appear to be named defendants in the EBH Action. On December 15, 2016, the State Court entered an order coordinating the two actions (collectively "State Court Actions").

LEG does not identify itself as a creditor of EBH, but apparently is in favor of this involuntary proceeding because of LEG's relationship to Eco-Bat. As mentioned in note 4, Eco-Bat was a named defendant in the GoldenTree Action. Eco-Bat and related entities apparently are the world's largest producer and recycler of lead (including from lead-acid car batteries). EBH apparently owns approximately 87 percent of the equity interests in Eco-Bat while LEG holds nearly 7 percent. See LEG Statement at 3:7-12. On or about January 18, 2017, Eco-Bat was dismissed from the GoldenTree Action for lack of personal jurisdiction inasmuch as Eco-Bat was formed under the laws of the United Kingdom and lacks sufficient contacts with the State of Nevada. LEG indicated that it would be proceeding with a shareholder derivative action in the English High Court addressing various improper and allegedly illegal acts of Meyers, either directly or, indirectly through his control of EBH. See LEG Statement at 3:21 to 4:13 & nn. 5 and 7.

Because the alternative abstention request was granted, the Summary Judgment Motion and Motion to Reopen brought by GLAS were denied without prejudice. See Summary Judgment Order at 1:28 to 2:9. The same order denied without prejudice EBH's motion to strike the LEG Statement.

The status report filed by GLAS ("GLAS Status Report") was accompanied by a request for judicial notice to which is attached 14 separate exhibits ("GLAS Status RJN").

Among other things, the status reports advised that on or about May 3, 2018, the State Court entered an order staying the State Court Actions through June 17, 2018, pending the outcome of certain appeals to the Nevada Supreme Court or the Nevada Court of Appeals. See EBH Status Report at 10:20 to 11:11:8; GLAS Status Report at 6:2-5; PIK Lender Status Report at 2:11-22.

Exhibit "30" to the EBH RJN is a copy of a separate complaint filed in the State Court on May 18, 2018, styled as EB Holdings II, Inc. v. GLAS USA LLC, Case No. A-18-774720-B ("EBH-GLAS Action"). According to that pleading ("EBH-GLAS Complaint"), EBH "seeks a declaration that...the lenders holding a majority of the interests in the loan (here, the GoldenTree Group) control the enforcement of the PIK Loan, may pursue remedies without the approval or consent of the Administrative Agent or minority lenders, and may exercise control over whether the PIK Loan is accelerated and the consequences of such acceleration." EBH-GLAS Complaint at ¶ 34. EBH also "seeks a declaration that, because the GoldenTree Group held a majority of the outstanding interests in the PIK Loan, their election to accelerate the PIK Loan and commence the State Court action bind all other lenders as well as the Administrative Agent."Id. at ¶ 35. The complaint is framed as a single cause of action seeking a declaration (a) that GLAS is bound by the GoldenTree Group's acceleration of the PIK Loan, and (b) that the repayment rights of all lenders under the PIK Loan depend on the outcome of the GoldenTree litigation. See EBH-GLAS Complaint at 12:11-5.

The court denied the request of GLAS to hear the 362 Motion on an expedited basis. (ECF No. 267).

By stipulation of the parties, the status hearing was changed from May 9, 2018, to May 15, 2018, and then continued to May 22, 2018. (ECF Nos. 239, 249).

Attached as Exhibit "1" to the Ruling Notice, is a copy of an order entered by the Nevada Supreme Court on June 22, 2018, staying the State Court Actions pending further order. The apparent purpose of the stay is to permit the Nevada Supreme Court to decide a petition for writ of prohibition or mandamus challenging an interlocutory ruling by the State Court. The order includes a briefing schedule that concludes up to 45 days from its entry.

Susquehanna Ltd. maintains that its joinder does not advance any new arguments outside of the 362 Motion. See Susquehanna Response at 2:9-10. The court agrees. Accordingly, the court overruled EBH's objection to the Susquehanna Joinder at the hearing, but did not permit Susquehanna Ltd.'s counsel to present oral argument.

Under Section 362(a), it is the filing of a voluntary, a joint, or an involuntary bankruptcy petition that operates as the automatic stay. See 11 U.S.C. § 362(a) ("a petition under section 301, 302, or 303 of this title...operates as a stay..."). In an involuntary proceeding, an order for relief is not entered unless the alleged debtor does not contest the involuntary petition, or, the court makes the determinations required under Section 303(h). See 11 U.S.C. § 303(h) (1 or 2).

The instant motion does not define the term "Non-Party Lenders under the PIK Loan Agreement," but incorporates the terms used in the GLAS Status Report. See 362 Motion at 2 n.1. The term " 'Non-Party Lenders' refers to all PIK Lenders that are not State Court Lenders." GLAS Status Report at 3 n.5. By definition, these PIK Lenders cannot include any of the entities that joined with GLAS in commencing this involuntary proceeding. See discussion at note 4, supra. At the hearing on this motion, GLAS represented that the Non-Party Lenders consist of 39 entities, holding 24.68 percent of the PIK Loan obligation, and totaling approximately $600 million. So as the administrative agent for participants representing approximately one-quarter of the PIK Loan, GLAS apparently is requesting relief from stay so that it can adjudicate in a non-bankruptcy forum, "the amounts owing" to those participants.

GLAS also seeks an order "confirming that GLAS is not precluded by the automatic stay from defending itself against the EBH State Court Complaint." Id. at 7:24-25. Even though this request is more in the nature of declaratory relief, it is a non-issue because EBH "agrees that the automatic stay does not bar GLAS from defending itself in GLAS Action under the plain language of Section 362(a), because it was commenced by EB Holdings." EBH Opposition at 7n. 25. EBH also acknowledges that "GLAS does not require relief to participate in the Coordinated Action, as the Stay Relief Stipulation is not limited to the PIK Lender Group, but broadly permits the Coordinated Action to proceed." Id. See also Dismissal Decision at 4 n.9.

After EBH filed its written opposition to the 362 Motion, GLAS stated in writing that it is seeking to pursue the litigation in the federal district court for the Southern District of New York. See GLAS Reply at 1:26 to 2:3.

This provision of the PIK Loan Agreement describes the rights and obligations of a "Finance Party." In Section 1.1 of the PIK Loan Agreement, a "Finance Party" is defined to include an "Administrative Party or a Lender." In turn, an "Administrative Party" is defined to include the administrative agent, and a "Lender" is defined to include an original lender and any permitted successor or participant. The same section defines a "Finance Document" to include, inter alia , the PIK Loan Agreement. Section 2.4(d) of the PIK Loan Agreement provides that "the rights of a Finance Party under the Finance Documents are separate and independent rights," Section 2.4(e) provides that "a Finance Party may, except as otherwise stated in the Finance Documents, separately enforce those rights," and Section 2.4(f) provides that "a debt arising under the Finance Documents to a Finance Party is a separate and independent debt."

Apparently, the Golden Tree Plaintiffs requested GLAS's predecessor, Credit Suisse, to pursue the collection action against EBH, but Credit Suisse refused to do so. See Dismissal Decision at 27 n.69. The Golden Tree Plaintiffs then chose to file the Golden Tree Action in Nevada, presumably because, among other reasons, Meyers resides in Nevada. If the action had been commenced in the New York Federal Court, the Golden Tree Plaintiffs might have had difficulty establishing personal jurisdiction over Meyers because he may not have consented to personal jurisdiction there.

In both the written and oral argument presented during this proceeding by GLAS and the PIK Lender Group, this bankruptcy court has been reminded of the various benefits of a Chapter 11 reorganization, including the preservation and pursuit of avoidance actions, the gathering of other assets, the investigation of EBH's financial affairs, and the like. None of the reminders, however, include the fact that the EBH Action, as well as the subsequent EBH-GLAS Action, would be assets of the Chapter 11 estate along with EBH's equity interests in Eco-Bat. Nor do those reminders mention that the State Court Actions involve the majority of the PIK Loan participants and who are pursuing claims against Meyers. No one should be fooled into thinking that an involuntarily initiated Chapter 11 proceeding placed under the control of different management would not offer potentially significant, distinct, non-bankruptcy, strategic litigation advantages to GLAS and the PIK Lender Group. An obvious purpose of Section 303(a)'s requirement that there be no "bona fide dispute as to liability or amount" of the petitioning creditor claims is to discourage improvident strategies from being pursued.

GLAS acknowledges that EBH-GLAS Action was commenced before its 362 Motion was filed, but suggests that it was improper for EBH to do so. See 362 Motion at 2:23 to 3:23. At the hearing, GLAS also informed the court that it had removed the action from the State Court to the Nevada Federal Court. Counsel for all the parties acknowledged that the removal took place on June 20, 2018, that the deadline for GLAS to respond to the EBH-GLAS Complaint had been extended to July 13, 2018, and that EBH's deadline to file a motion for remand would expire on July 20, 2018.

By asserting a compulsory counterclaim for breach of a prepetition contract, GLAS would not be merely defending itself. To that extent, relief from stay for cause would be appropriate under Section 362(d)(1), even though the EBH-GLAS Action was commenced by EBH as an alleged debtor.

The first exception under Civil Rule 13(a)(2) is consistent with the "first filed" rule that gives priority to the earlier filed competing lawsuit. Civil Rule 13(a)(2) applies even where the earlier filed lawsuit is in a non-federal forum. See, e.g., United States v. Sarman, 699 F.2d 469 (9th Cir. 1983) (no compulsory counterclaim in federal tax lien foreclosure proceeding where defendant's claim was the subject of a prior state court probate proceeding in Nevada). The first filed rule "recognizes that a party who first brings an action into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter." Horowitz v. 148 South Emerson Associates LLC, 888 F.3d 13, 22 (2nd Cir. 2018). See, e.g., EMC Corp. v. Bright Response, LLC, 2012 WL 4097707 (N.D. Cal. Sept. 17, 2012) (stay of second-filed proceedings in Northern District of California pending ruling on transfer motion by Eastern District of Texas in first-filed proceeding). Compare XpertUniverse, Inc. v. Cisco Systems, Inc., 2017 WL 4551519 (N.D. Cal. 2017) (transfer of action in Northern District of California to District of Delaware denied where existing action in Delaware involves separate claims).

See Dismissal Decision at 16 n. 45.

EBH is seeking a declaration, inter alia , that GLAS and all of the participants in the PIK Loan, are bound by the actions of the GoldenTree Parties to accelerate the obligation. See note 9, supra.

GLAS categorically asserts that there is no "bona fide dispute as to the separate debts due to GLAS and the Non-Party Lenders." See 362 Motion at 2:7-8. It then makes a troubling representation that "In March 2018, the State Court confirmed that there was no bona fide dispute when it ruled that it would not be making any determinations with respect to GLAS and the Non-Party Lenders." See 362 Motion at 2:11-12 & n. 2 (emphasis added). Footnote 2 of the 362 Motion references a copy of the transcript of the Plaintiffs' partial summary judgment hearing before the State Court on March 13, 2018, in the Golden Tree Action ("March 13 Transcript"), as well as the subsequent written order of the State Court denying that motion without prejudice. Those items are attached as Exhibits 5 and 6 to the GLAS Status RJN. Clearly, nothing was "confirmed" as even GLAS previously represented that "the State Court stated that it would not be making any determinations as to any of the claims held by GLAS and the Non-Party Lenders." GLAS Status Report at 5:8-9. In fact, the State Court judge, after denying the Plaintiffs' partial summary judgment motion in the Golden Tree Action, specifically stated: "So I'm not saying anything about anyone who's not in front of me, including other potential lenders." March 13 Transcript at 28:23-24 (emphasis added). Nothing in the State Court judge's oral statements refers to, much less confirms, the existence or non-existence of a bona fide dispute regarding parties not before the State Court. Moreover, the State Court's inability to enter orders and judgments against non-parties is immaterial to whether its orders and judgments may have res judicata effect with respect to non-parties. See Dismissal Decision at 29 n.76.

A request for change of venue ordinarily requires the moving party to demonstrate, at the very least, that the alternative forum is more convenient on the whole for the parties and the witnesses, and is in the interests of justice. See 28 U.S.C. § 1404(a). In connection with the 362 Motion, GLAS has not suggested in any way that the New York Federal Court would be more convenient than the Nevada Federal Court or the Nevada State Court for GLAS or EBH, nor for any percipient witnesses involved in the breach of contract and declaratory relief claims.

It is not clear why the parties to the PIK Loan Agreement would permit actions relating to the agreement to be filed in "any other court." Practices vary from court to court, jurisdiction to jurisdiction, and nation to nation, such as the allocation of the burden of proof, the applicable standard of proof, the admissibility of evidence, the right to appeal, and the like. While the parties to the agreement chose to address certain matters, see PIK Loan Agreement, § 31.2 (service of process), § 31.3 (borrower's waiver of immunity) and § 31.4 (waiver of jury trial), all other matters affecting the pursuit of a civil claim are left to the jurisdiction selected by the initiating litigant.

Whether that choice reflected a strategic decision to include claims against Meyers and other parties in Nevada, is immaterial. As previously noted at 5, supra, the GoldenTree Plaintiffs attempted to include Eco-Bat as a defendant in the Golden Tree Action, but Eco-Bat was dismissed for lack of personal jurisdiction.

GLAS cited the decision in Flintkote Co. v. Aviva P.L.C. (In re Flintkote), 2015 WL 1405922 (D.Del. Mar. 25, 2015), as rejecting the first filed rule when a voluntary Chapter 11 debtor under a confirmed plan filed a complaint in the Delaware federal court in anticipation that its liability carrier would commence a federal declaratory relief action in California. See 362 Motion at 8:16-19. In Flintkote, however, the Delaware federal court transferred the action to California in large part because the debtor had filed the action in Delaware in order to avoid application of California law that was unfavorable to its defense of the declaratory relief action. 2015 WL 1405922, at 4-5. Here, the same law is applied without transferring any existing proceeding and without commencing an additional action in the New York Federal Court.

Given that the plaintiffs in the Golden Tree Action, including six of the seven petitioning creditors, included an alter ego claim alleging pervasive fraud and self-dealing by Meyers, see Dismissal Decision at 9:2-7, it strains credulity to claim surprise that EBH would vigorously dispute the validity or amount of the petitioners' claims.

Those cases are Burger Boys, Inc. v. South Street Seaport Ltd. Partnership (In re Burger Boys, Inc.), 183 B.R. 682 (S.D. N.Y. 1994), Litton Sys., Inc. v. Frigitemp Corp. (In re Frigitemp Corp.), 8 B.R. 284 (S.D. N.Y. 1981), and In re Abeinsa Holding, Inc., 2016 WL 5867039 (Bankr. D. Del. Oct. 6, 2016).

"Fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case" requires the appointment of a trustee in Chapter 11 proceedings. 11 U.S.C. § 1104(a)(1). The complaints filed in the Golden Tree Action are replete with allegations of such conduct.

At the risk of a claim by EBH under Section 303(i), nothing prevents Susquehanna Ltd. and any other Non-Party Lender from joining in the Involuntary Petition. See 11 U.S.C. § 303(c).